**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| GREGORY S. EADY, | Civ. Action No. 21-15264 (JXN) |
| Petitioner, | |
| v. | **OPINION** |
| RAYMOND ROYCE, *et al.*, | |
| Respondents. | |

<u>**NEALS**</u>, District Judge

Petitioner Gregory S. Eady ("Petitioner"), an individual currently confined at New Jersey State Prison in Trenton, New Jersey, filed the instant petition for a writ of habeas corpus ("Petition") pursuant to 28 U.S.C. § 2254.  (ECF No. 1, ("Petition" or "Pet.")). For the reasons expressed below, the Court denies the Petition and a certificate of appealability shall not issue.

## I.  BACKGROUND

Petitioner pled guilty to first-degree murder, carjacking, armed robbery, and burglary. Petitioner was charged with crimes in three separate indictments. On December 4, 2013, a Hudson County grand jury returned Indictment No. 2207-12-2013, charging Petitioner with first-degree armed robbery, N.J.S.A. § 2C:15-1 (count one); possession of a weapon for an unlawful purpose, N.J.S.A. § 2C:39-4a (count two); and unlawful possession of a weapon, N.J.S.A § 2C:39-5b (count three). (ECF No. 7-2 at 7-8.) On September 30, 2014, a Hudson County grand jury returned Indictment No. 1558-09-2014, charging Petitioner with first-degree carjacking, N.J.S.A. § 2C:15-

2 (count one); first-degree armed robbery, N.J.S.A. § 2C:15-1 (count two); second-degree armed burglary, N.J.S.A. § 2C:18-2 (count three); unlawful possession of a weapon, N.J.S.A. § 2C:39-5b (count four); possession of a weapon for an unlawful purpose, N.J.S.A. § 2C:39-4a (count five); and third-degree aggravated assault, N.J.S.A. § 2C:12-1b(2) (counts six, seven, eight, and nine). (*Id.* at 4-6.) On January 13, 2015, a Hudson County grand jury returned Indictment No. 0080-01-2015, charging Petitioner with first-degree murder, N.J.S.A. § 2C:11-3a (1) and (2) (counts one and four); unlawful possession of a weapon, N.J.S.A. § 2C:39-5b (counts two and six); and possession of a weapon for an unlawful purpose, N.J.S.A. § 2C:39-4a (counts three and five). (*Id.* at 2-3.)

Specifically, Petitioner was charged with the June 2, 2014, armed robbery of Zachary Garry and Jeremy Fernandez, burglary of Dylan Brancaccio's home, and the carjacking of Alan Deravanesian. (*See* ECF No. 8 at 4-5.) Petitioner was also charged with the June 9, 2014, shooting deaths of Jamal Cooks and Sean Spencer. (*See id.* at 5.)

On March 19, 2015, pursuant to a plea agreement, Petitioner appeared before the Honorable John A. Young, Jr., J.S.C. and entered a plea of guilty to counts one and four of Indictment No. 0080-01-2015, charging Petitioner with the first-degree murders of Cooks and Spencer. (*See generally* ECF No. 7-4, Plea Tr.) On the same day, Petitioner entered a plea of guilty to counts one, two, and three of Indictment No. 1558-09-2014, charging Petitioner with the carjacking of Deravanesian, the armed robbery of Garry, and the burglary committed against Brancaccio. (*See id.*) The State agreed to dismiss the remaining counts in those two indictments, as well as the entirety of Indictment No. 2207-12-2013 at sentencing. (*Id.* at 4:15-25.)

On June 11, 2015, Petitioner was sentenced to an aggregate term of seventy-five years imprisonment with a seventy-two-and-one-half year period of parole ineligibility. (*See* ECF No.

7-5, Sentencing Tr. at 31:5 to 37:5.) That aggregate sentence was based on two consecutive thirty-year terms of imprisonment, both subject to a thirty-year period of parole ineligibility, as to the two counts of first-degree murder in Indictment No. 0080-01-2015; and concurrent terms of fifteen-years imprisonment as to carjacking, twelve-years imprisonment as to armed robbery, and seven-years imprisonment as to burglary, all subject to the No Early Release Act ("NERA"), N.J.S.A. § 2C: 43-7.2, on Indictment No. 1558-09-2014. (*See id.*) The three concurrent sentences on Indictment No. 0080-01-2015 were to run consecutive to the sixty-year sentence on Indictment No. 1558-09-2014. (*See id.*)

Petitioner filed a Notice of Appeal with the Superior Court of New Jersey, Appellate Division, which was placed on the Appellate Division's Sentencing Oral Argument Calendar ("SOA"). (*See* ECF No. 7-2 at 24; *see also* ECF No. 7-6, SOA Tr.) Following oral argument, the Appellate Division affirmed Petitioner's judgment of conviction. (*See id.*) The New Jersey Supreme Court subsequently denied Petitioner's petition for certification. (*Id.* at 25.)

On December 5, 2016, Petitioner filed a post-conviction relief ("PCR") petition. (ECF No. 7-2 at 29-33.) Petitioner alleged that plea counsel was ineffective for advising him to accept a guilty plea after misinforming him that he would only be sentenced to a total of thirty years imprisonment. (*See* ECF No. 7-3 at 39-65.) Following oral argument on September 7, 2017, Judge Young granted an evidentiary hearing which was held on November 2, 2017, December 21, 2017, February 22, 2018, and March 1, 2018. (*See id.* at 66-73; *see also* ECF Nos. 7-7, 7-8, 7-9, 7-10, 7-11.) On June 14, 2018, the PCR court denied Petitioner's PCR petition. (ECF No. 7-3 at 74, 75-89.) On September 17, 2018, Petitioner filed a Notice of Appeal before the Superior Court, Appellate Division. (ECF No. 7-2 at 106-109.) On June 26, 2020, the Appellate Division affirmed the denial of Petitioner's PCR petition. (ECF No. 7-3 at 118-129, *State v. Eady*, No. A-0250-18T2,

2020 WL 3481483 (N.J. Super. Ct. App. Div. June 26, 2020)). On December 8, 2020, the New Jersey Supreme Court denied Petitioner's petition for certification. (*Id.* at 130.)

Petitioner filed his instant habeas petition on August 6, 2021. (ECF No. 1.) Petitioner raises one ground for habeas relief, arguing that he was denied his "right to effective assistance of trial counsel when counsel advised [Petitioner] to accept a guilty plea resulting in a de facto life sentence in a state without a death penalty." (*Id.* at 5.) Respondents filed an answer (ECF No. 7), and Petitioner filed a reply (ECF No. 13).

## II.  STANDARDS OF REVIEW

Under the current version of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, the district court "shall entertain an application for writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Habeas petitioners bear the burden of establishing their entitlement to relief for each claim presented in a petition based upon the record that was before the state court.  *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). District courts are required to give great deference to the determinations of the state trial and appellate courts. *Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for writ of habeas corpus unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States: or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"Contrary to clearly established Federal law" means the state court applied a rule that contradicted the governing law set forth in U.S. Supreme Court precedent or that the state court confronted a set of facts that were materially indistinguishable from U.S. Supreme Court precedent and arrived at a different result than the Supreme Court. *Eley*, 712 F.3d at 846 (*citing Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015). An "unreasonable application" of clearly established federal law is an "objectively unreasonable" application of law, not merely an erroneous application. *Eley*, 712 F.3d at 846 (*quoting Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010)). As to 28 U.S.C. § 2254(d)(1), a federal court must confine its examination to evidence in the record. *Cullen v. Pinholster*, 563 U.S. 170, 180–81 (2011).

"When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods*, 125 S. Ct. at 1376. Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Furthermore, "[w]hen a state court arrives at a factual finding based on credibility determinations, the habeas court must determine whether that credibility determination was unreasonable." *See Keith v. Pennsylvania*, 484 F. App' x 694, 697 (3d Cir. 2012) (*citing Rice v. Collins*, 546 U.S. 333, 339 (2006)).

Finally, to the extent that a petitioner's constitutional claims are unexhausted and/or procedurally defaulted, a court can nevertheless deny them on the merits under 28 U.S.C. §

2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of [petitioner's] claims on the merits, we need not address exhaustion"); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005) (considering procedurally defaulted claim, and stating that "[u]nder 28 U.S.C. § 2254(b)(2), we may reject claims on the merits even though they were not properly exhausted, and we take that approach here").

## III. ANALYSIS

In his sole ground for relief, Petitioner argues that trial counsel was ineffective. (ECF No. 1 at 5.) Petitioner claims that trial counsel advised him to accept a guilty plea resulting in a de facto life sentence after misinforming Petitioner that he would only receive a thirty-year sentence if he pled guilty. (*Id.*)

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court articulated the two-prong test for demonstrating when counsel is deemed ineffective. First, a petitioner must show that considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *See id.* at 688; *see also Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013) (noting that it is necessary to analyze an ineffectiveness claim considering all circumstances) (citation omitted). A petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. *See Strickland*, 466 U.S. at 690. Under this first prong of the *Strickland* test, scrutiny of counsel's conduct must be "highly deferential." *See id.* at 689. Indeed, "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The reviewing court must make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. If counsel makes "a thorough investigation of law

and facts" about his plausible options, the strategic choices he makes accordingly are "virtually unchallengeable." *Gov't of Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1432 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 690–91). If, on the other hand, counsel pursues a certain strategy after a less than complete investigation, his choices are considered reasonable "to the extent that reasonable professional judgments support the limitations on investigation." *Rolan v. Vaughn*, 445 F.3d 671, 682 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 690–91).

The second prong of the *Strickland* test requires the petitioner to affirmatively prove prejudice. *See* 466 U.S at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*; *see also McBridge v. Superintendent, SCI Houtzdale*, 687 F.3d 92, 102 n.11 (3d Cir. 2012). "This does not require that counsel's actions more likely than not altered the outcome, but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 111–12 (2011) (internal quotation marks and citations omitted).

"With respect to the sequence of the two prongs, the *Strickland* Court held that 'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'" *Rainey v. Varner*, 603 F.3d 189, 201 (3d Cir. 2010) (quoting *Strickland*, 466 U.S. at 697).

When assessing an ineffective assistance of counsel claim in the federal habeas context, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," which "is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Grant*, 709 F.3d at 232 (quoting *Harrington*, 562 U.S. at 101). "A state court must be granted a deference and latitude that are not in operation when the case involves [direct] review under the *Strickland* standard itself." *Id.* Federal habeas review of ineffective assistance of counsel claims is thus "doubly deferential." *Id.* (quoting *Pinholster*, 563 U.S. at 190). Federal habeas courts must "take a highly deferential look at counsel's performance" under *Strickland*, "through the deferential lens of § 2254(d)." *Id.* (internal quotation marks and citations omitted).

Petitioner raised the instant claim on collateral appeal and the Appellate Division affirmed the PCR court's denial of the claim. *Eady*, 2020 WL 3481483 *1-4. The Appellate Division summarized the testimony from Petitioner's PCR hearing and the PCR court's findings as follows:

> The [PCR] judge conducted an evidentiary hearing at which time [Petitioner] called his father, his mother, and himself as witnesses. The State called [Petitioner's] trial attorney and the assistant prosecutor as witnesses.
>
> As explained in the [PCR court's] written decision, [Petitioner's] father testified that he spoke twice to defense counsel, who explained that [Petitioner's] fingerprints on the murder weapon was the "900 pound gorilla in the room" and that if [Petitioner] pleaded guilty he could "write paperwork for him to get 30 years"; he also testified that counsel never told him [Petitioner] would face more than thirty years in prison. [Petitioner's] mother testified that counsel told her numerous times on the telephone and in person that her son would be sentenced to between fifteen and thirty years for the murders and that "they would run at the same time, and the other charges for carjacking would be dismissed."
>
> [Petitioner] testified that he was told he faced a life sentence if he went to trial but that if he pleaded guilty he would be sentenced to a "30 with a 15." According to [Petitioner], his attorney told him that

"because [he] didn't kill a baby or a cop[,]" he would receive a thirty-year prison term with a fifteen-year prison term if he pleaded. He asserted that counsel went over the plea forms with him in the county jail a few weeks before the guilty plea and that counsel pointed to question number seven, which indicated "30," as the term that he would receive. [Petitioner] testified that his attorney never told him, as the judge described it in his opinion, "that if he ple[a]d[ed] guilty he could face up to 110 years in prison, or up to 90 years with 85% parole ineligibility." He also testified that he was not shown the information contained in response to question number thirteen, which revealed that the State would seek consecutive terms at sentencing. [Petitioner] claimed that if he had known the greater exposure permitted by the plea agreement, he would have gone to trial.

Defense counsel testified that he met and spoke with both [Petitioner's] parents and advised that the evidence of [Petitioner's] guilt was overwhelming, that [Petitioner] would be convicted if he went to trial, and that his only chance to "somehow walk out of prison" was to enter into the plea agreement.

The [PCR court] summarized trial counsel's testimony about the plea form and his discussions with [Petitioner] about the plea form in the following way:

> [Counsel] testified that he went over the plea forms with [Petitioner] at the jail so that they would not have to rush in the courthouse. He testified that he told [Petitioner] that Question 13 was left blank at the time to be filled in by the Assistant Prosecutor at the time of sentencing with specific language requesting consecutive terms on the homicide charges. [Counsel] testified that he discussed the terms of the plea with [Petitioner], and told [Petitioner] that he would be arguing for concurrent sentences on the homicide charges. [Counsel] testified that he wrote "30" as the statutory maximum for murder, despite the fact that "Life" was the actual maximum on each count, to put a number on the form. [Counsel] testified that he told [Petitioner] that "Life" was an unlikely but possible sentence. He also testified that he told [Petitioner] that if he went to trial he would face life in prison. [Counsel] testified that he could not recall why he wrote "20" as the maximum sentence for carjacking when the actual maximum was "30." He testified that although he could not

9

independently recall correcting this error with [Petitioner], he believed that he did at some point. [Counsel] testified that he does not recall why Question 10 of the plea form did not include the additional charges in Question 7, however, he testified that [Petitioner] was aware of the extended term of parole ineligibility of at least 15-20 years.

The judge lastly recounted that the assistant prosecutor testified he was told [Petitioner] wanted to plead guilty because he had become religious and wanted to atone for the murders.

The judge found that trial counsel's testimony about the plea agreement and his discussions with [Petitioner] and his parents were credible and that the testimony of [Petitioner] and his parents were "incredible as it is directly contradicted by the record." We are obligated to defer to these credibility findings because the judge was able to observe and assess the demeanor of the witnesses. *State v. Locurto*, 157 N.J. 463, 471-72 (1999).

Moreover, it is not just his credibility determination that produced the judge's conclusion that [Petitioner] knowingly and willingly entered his guilty plea. Despite any confusion about the content of the plea form, the judge thoroughly discussed with [Petitioner] that to which he was agreeing. In denying post-conviction relief, the judge quoted the assistant prosecutor's description of the plea agreement in open court and in [Petitioner's] presence; at that time, the assistant prosecutor said:

> It is the State's understanding that [Petitioner] will be entering a plea of guilty [of] first degree murder of Jamal Cooks and Sean Spencer. And in exchange, at the time of the sentencing, the State will be recommending 30 year sentences, that being consecutive to each other . . . . It is the State's understanding that the [d]efense will argue for concurrent sentences. In addition, [Petitioner] will be entering a plea of guilty [of] first degree carjacking, first degree armed robbery, [and] second degree armed burglary. And, in exchange, the State will be free to speak in the statutory ranges for those crimes, arguing for a consecutive sentence on the top count of the indictment, and concurrent sentences to each other. And, again, [Petitioner] will be arguing for concurrent sentences on that.

The assistant prosecutor and defense counsel added that the remaining counts of all indictments would be dismissed.

The judge then asked defendant whether he "heard what the [p]rosecutor and your attorney just said." [Petitioner] responded, "[y]es, sir." The judge asked whether what they said was also [Petitioner's] understanding of the plea agreement and, again, [Petitioner] responded "[y]es, sir." The judge also asked whether [Petitioner] had enough time to speak to his attorney and whether it was [Petitioner's] desire "to plead guilty today," and [Petitioner] responded "[y]es, sir" to both questions. With that, the judge again reviewed the material aspects of the plea agreement with defendant:

> THE COURT: Now, with the charges you're pleading guilty to, you understand, on [the murder charges] you face a maximum of 30 years – it's actually life.
>
> . . . .
>
> THE COURT: You would actually face, the plea form indicates 30 which is what – the sentence, but it's actually a 30 year minimum sentence. You would face, if you went to trial, up to a life sentence on one of those charges. You understand that?
>
> [PETITIONER]: Yes, sir.
>
> THE COURT: And that those charges could run – the sentences on those charges, if you were convicted, could run consecutively?
>
> [PETITIONER]: Yes, sir.
>
> THE COURT: You understand on the charges in [the other indictment,] on the carjacking it's another 20 years maximum, the armed robbery of 20 years, and the burglary ten years. So, in addition to your exposure to two consecutive life sentences you could also potentially face up to another 50 years consecutive to those life sentences. You understand that?
>
> [PETITIONER]: Yes, sir.
>
> . . . .

> THE COURT: [K]nowing everything that we've gone through here today, rights you're giving up, the sentence that you face here which <u>the State is looking for 30 years consecutive to 30 years up to another 20 years consecutive. Knowing all that, do you want to plead guilty here today</u>?
>
> [PETITIONER]: <u>Yes, sir</u>.

[Emphasis added.]

In light of all these and other descriptions of the plea agreement and [Petitioner's] exposure provided during the course of the proceedings, the judge rejected, as a factual matter, [Petitioner's] contention that he did not understand that he faced the possibility of the sentence that he actually received by pleading guilty as agreed.

From all this, and as thoroughly explained in his written decision, the [PCR court] rejected [Petitioner's] argument that he did not knowingly and voluntarily enter into the plea agreement, rejected any argument that [Petitioner] did not knowingly and voluntarily enter his guilty pleas, and denied his PCR petition.

*Id.* Additionally, the PCR court found that based on the above, trial counsel's advice that Petitioner plead guilty and argue for concurrent sentences at sentencing was reasonable. (ECF No. 7-3 at 88.) The PCR court found Petitioner had not "established that trial counsel's performance fell below and objective standard of reasonableness." (*Id.*) The Appellate Division affirmed the PCR court denial Petitioner's claim finding the claim had insufficient merit to warrant further discussion in a written opinion. *Eady*, 2020 WL 3481483 *4, citing R. 2:11-3(e)(2).

The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses open to a defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970) (citations omitted). The Third Circuit has noted a habeas petitioner challenging the voluntary nature of his guilty plea "faces a heavy burden." *Zilich v. Reid*, 36 F.3d 317, 320 (3d Cir. 1994). The voluntariness of a plea "can be determined only by

12

considering all of the relevant circumstances surrounding it." *Brady v. United States*, 397 U.S.

742, 749 (1970) (citations omitted). The United States Supreme Court has explained that:

> the representations of the defendant, his lawyer, and the prosecutor
> at such a hearing, as well as any findings made by the judge
> accepting the plea, constitute a formidable barrier in any subsequent
> collateral proceedings. Solemn declarations in open court carry a
> strong presumption of verity. The subsequent presentation of
> conclusory allegations unsupported by specifics is subject to
> summary dismissal, as are contentions that in the face of the record
> are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977); *see also United States v. Stewart*, 977 F.2d 81,

84 (3d Cir. 1992) ("The ritual of the [plea] colloquy is but a means toward determining whether

the plea was voluntary and knowing. A transcript showing full compliance with the customary

inquires and admonitions furnishes, strong, although not necessarily conclusive, evidence that the

accused entered his plea without coercion and with an appreciation of its consequences."). As such,

determinations of factual issues by state courts are presumed to be correct, and a defendant "ha[s]

the burden of rebutting the presumption of correctness by clear and convincing evidence." *See* 28

U.S.C. § 2254(e)(1). A challenge to a guilty plea based upon ineffective assistance of counsel is

analyzed using the two-part standard outlined in *Strickland*. *See Hill v. Lockhart*, 474 U.S. 52

(1985) (noting *Strickland* applies to ineffective-assistance claims arising out of plea process).

Determinations of factual issues made by state courts are presumed to be correct. 28 U.S.C.

§ 2254(e)(1); *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003). However, "[d]eference does not by

definition preclude relief. A federal court can disagree with a state court's credibility determination

and, when guided by AEDPA, conclude the decision was unreasonable or that the factual premise

was incorrect by clear and convincing evidence." *Miller–El*, 537 U.S. at 340, 123 S.Ct. 1029.

Here, the record does not support a finding that the state court's credibility determination

was unreasonable. The state court accurately summarized the testimony from Petitioner's PCR

hearing and found trial counsel's testimony credible. More specifically, the state court found that

prior to Petitioner entering his guilty plea, counsel explained to him that the state would be arguing

for consecutive thirty-year prison sentences on the two murder charges, but trial counsel would

argue for those sentences to run concurrently. The record before the Court supports that finding.

During Petitioner's plea hearing, the State advised that it would be recommending thirty-

year sentences to run "consecutive to each other per *State v. Yarborough*" and defense counsel

would be arguing "for concurrent sentences." (ECF No. 7-4, Plea Tr. at 3:19 to 4:4.) When the

court asked Petitioner whether that was his understanding of the plea agreement, Petitioner

responded in the affirmative. (*Id.* at 4:1-6.) The court also asked Petitioner whether he had enough

time to speak to his attorney and whether it was his desire "to plead guilty today," and Petitioner

responded "[y]es, sir" to both questions. (*Id.* at 6:14 7:2.) The trial court explained that if Petitioner

went to trial, he could potentially face two consecutive life sentences on the murder charges, and

an additional fifty years on the carjacking, armed robbery, and burglary charges, that could run

consecutive to the life sentences. (*Id.* at 10:11 to 11:8.) Petitioner indicated that he understood the

potential sentences he could face at trial. (*Id.* at 11:9.) Finally, as noted by the Appellate Division,

prior to accepting Petitioner's guilty plea, the trial court stated:

> The Court: Now, [Petitioner] knowing everything that we've gone
> through here today, rights you're giving up, the <u>sentence that you
> face here which the State is looking for 30 years consecutive to 30
> years up to another 20 years consecutive. Knowing all of that, do
> you want to plead guilty here today?</u>
>
> Petitioner: Yes, sir.

(*Id.* at 22:11 to 22:16 (emphasis added).)

Having considered the state court proceedings and the parties' submissions, the Court finds

that the state court's conclusion regarding the credibility of trial counsel's testimony was not

unreasonable. The Appellate Division's conclusion that Petitioner's guilty plea was intelligent, and voluntary was not an unreasonable application of clearly established federal law. Finally, in finding counsel's performance was not deficient, the state court did not violate clearly established law, nor was the court unreasonable in their application of *Strickland*.

On habeas review, this Court must provide "double deference" to the state court's disposition of ineffective assistance of trial counsel claims. *Davis v. Adm'r New Jersey State Prison*, 795 F. App'x 100, 102 (3d Cir. 2019), cert. denied sub nom. *Davis v. Johnson*, 140 S. Ct. 2748, 206 L. Ed. 2d 923 (2020) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). Petitioner has not crossed the high threshold to establish that the Appellate Division's denial of his ineffective assistance of counsel claim involved an unreasonable application of *Strickland*. Because Petitioner failed to show trial counsel was ineffective, his petition for habeas relief is denied.

## IV.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in proceeding under 28 U.S.C. § 2254 unless he has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, the Court will deny Petitioner a certificate of appealability.

## V.   CONCLUSION

For the reasons stated above, Petitioner's petition for a writ of habeas corpus is denied and a certificate of appealability shall not issue. An appropriate order will be entered.

DATED: April 5, 2023

s/ Julien Xavier Neals
**JULIEN XAVIER NEALS**
United States District Judge